HADOUS|CO. PLLC
Nemer N. Hadous, AZ #027529
8245 N. 85th Way
Scottsdale, Arizona 85258
Phone: (602) 492-4432
Fax: (888) 450-0687
E-mail: nhadous@hadousco.com
Attorneys for Plaintiff

CHAMI LAW FIRM, PLLC
David A. Chami, AZ #027585
8245 N. 85th Way
Scottsdale, Arizona 85258
Phone: (818) 600-5564
E-mail: david@pricelawgroup.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Butt, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>Arizona Structural Laminators, LLC, an Arizona Limited Liability Company, Centurion of Arizona, LLC, an Arizona Limited Liability Company,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**JURY DEMAND**<br><br>Assigned to the Honorable |

Plaintiff Dennis Butt ("Plaintiff"), by counsel, respectfully submits this Complaint against Defendants Arizona Structural Laminators, LLC ("ASL"), and Centurion of Arizona, LLC ("Centurion") (collectively, "Defendants") alleging as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. During all time pertinent to this Complaint, Plaintiff resided in the State of Arizona, and within the judicial district of the United States District Court for the District of Arizona.

2. During all time pertinent to this Complaint, Defendant ASL was an Arizona limited liability company located in the State of Arizona and resided within the judicial district of the United States District Court for the District of Arizona.

3. Plaintiff seeks damages against Defendant ASL arising from negligence and gross negligence pursuant to Arizona and other applicable law.

4. During all time pertinent to this Complaint, Defendant Centurion was an Arizona limited liability company located in the State of Arizona and resided within the judicial district of the United States District Court for the District of Arizona.

5. Plaintiff seeks against Defendant Centurion arising from constitutional violations, including deliberate indifference to serious m edictal needs pursuant to 42 U.S.C. §§ 1983, 1988, and other applicable law.

6. During all time pertinent to this Complaint, Defendants caused events to occur in the State of Arizona within the judicial district of the United States District Court for the District of Arizona from which this Complaint arises, and/or has consented to venue in the United States District Court for the District of Arizona. Unless otherwise indicated, all conduct alleged herein was performed, directed at, and done within the judicial district of the United States District Court for the District of Arizona.

7. During all time pertinent to this Complaint, all Defendants' acts and/or omissions alleged or referenced in this Complaint were grossly negligent, reckless, malicious, shock the conscience, was in conscious disregard of a substantial risk of harm, and demonstrated a thoughtless, wanton, and total disregard for Plaintiff's health and safety.

8. This Court has subject matter jurisdiction over Plaintiffs' claims for violations of federal Constitutional rights pursuant to Article 3 of the United States Constitution, 28 U.S.C. §§1331, 1332, 1343.

9. This Court has supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367 and under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966).

10. Venue is proper in the United States District Court for the District of Arizona ("District of Arizona") pursuant to U.S.C. §1391(b), as the alleged unconstitutional, unlawful, and wrongful conduct occurred in the District of Arizona, and one or more Defendants reside within the District of Arizona.

**PRELIMINARY EXPERT OPINION CERTIFICATION**

11. Plaintiff incorporates paragraphs 1-10 as though fully set forth herein.

12. Plaintiff believes expert testimony is necessary and respectfully submits an accompanying Certification pursuant to A.R.S. § 12-2603 (attached hereto as Ex. 1).

**FACTS COMMON TO THE COUNTS**

13. Plaintiff incorporates paragraphs 1 through 12 as though fully set forth herein.

14. In the State of Arizona, inmates are required to perform 40 hours per week of hard labor for less than minimum wage. This in part to offset the cost to the state for meeting (guaranteeing) 100% occupancy quotas to private prison companies operating in Arizona.[1]

15. Defendant, through private agreement with the Arizona Department of Corrections and/or Arizona Correctional Industries ("ACI"), use inmates to perform "hard labor" for below market wages in their facilities.

16. Plaintiff was ordered to perform labor for Defendant ASL.

17. Prior to the assignment, which caused Plaintiff's injuries and gave rise to this Complaint, Plaintiff received no adequate safety or specialized training in the use of the heavy equipment and machinery from Defendant ASL, despite ASL's duty to provide reasonable training and a reasonably safe premises.

18. Nevertheless, Defendant ASL tasked Plaintiff with operating heavy equipment and machinery without reasonable and necessary safeguards, including safety helmets and reasonable and adequately maintained equipment/machinery.

19. On November 12, 2019, Plaintiff was performing labor for Defendant ASL.

---

1 Arizona appears to lead the nation in the number of private prisons (6) operating with quotas exceeding 90% guaranteed by the state (two of which are at 100%).

20. Defendant ASL did not provide Plaintiff with safety equipment, including a safety helmet.

21. Nevertheless, Plaintiff was placed in harm's way neat heavy equipment and machinery that Defendant ASL knew was prone to malfunction, and which had malfunctioned previously.

22. While performing dangerous labor for Defendant ASL without a safety helmet, an approximately 100-foot wooden plank burst and ejected from Defendant ASL's equipment/machinery and struck Plaintiff directly in the head causing severe injuries, including a traumatic brain injury, from which Plaintiff until this day continues to suffer.

23. The impact was so forceful Plaintiff's head was struck twice, and Plaintiff also suffered a hand fracture.

24. As a direct and proximate consequence of the traumatic brain injury Plaintiff suffered by Defendant ASL's negligence as herein alleged, Plaintiff also suffered resultant physical pain, emotional distress, headaches, migraines, memory loss, confusion, seizures, and other neurological injuries that persist.

25. Instead of providing a reasonably safe premises, reasonable safety equipment/gear, and reasonable safeguards, Defendant ASL failed to exercise reasonable care resulting in Plaintiff suffering injuries that are severe, and lifelong.

26. Following Plaintiff's injury, Plaintiff was deprived of reasonable care by Defendant Centurion, which is necessary to manage Plaintiff's injuries and symptoms caused

by the traumatic brain injury Plaintiff suffered through Defendant ASL's negligence/gross negligence.

27. Plaintiff's ongoing medical needs are serious, and emergent in nature as Plaintiff has suffered numerous recent seizures.

**COUNT ONE**
-Negligence-
Defendant ASL

28. Plaintiff incorporates paragraphs 1-27 as though fully set forth herein.

29. Defendant owed one or more duties of care to Plaintiff, including a duty to ensure a reasonably safe premises, and reasonably maintained equipment/machinery.

30. Defendant owed one or more duties of care to Plaintiff, including a duty to ensure that Plaintiff was properly trained and supervised for his respective tasks.

31. Defendant owed one or more duties of care to Plaintiff, including a duty to ensure that Plaintiff received necessary safety equipment, including protective equipment.

32. Defendant breached one or more of these duties of care by failing to keep its premises and equipment reasonably safe for Plaintiff.

33. Defendant breached one or more of these duties of care by failing to ensure that Plaintiff was properly trained and supervised for his assigned task.

34. Defendant breached one or more of these duties of care by failing to ensure that Plaintiff received necessary safety equipment, including protective equipment.

35. As a direct and proximate consequence of Defendants breach of these duties of care, Plaintiff suffered damages.

36. Plaintiff's injuries were foreseeable, predictable, and natural consequences of Defendant's breach of its duties of care.

37. Defendants are therefore liable for damages caused by its negligence, as well as the negligence (as above described) of any agents/employees acting in the scope of their employment under *respondeat superior*.

38. Plaintiff seeks damages for all injuries allowable by law, caused by Defendant's negligence.

**COUNT TWO**
-Gross Negligence/Punitive Damages-
Defendant ASL

39. Plaintiff incorporates paragraphs 1-38 as though fully set forth herein.

40. As alleged above, Defendant ASL breached one or more duties of care to Plaintiff that directly and proximately caused Plaintiff to suffer damages.

41. The duties of care Defendant ASL owed to Plaintiff were obvious, and Defendant knew that death or serious injury could result if Defendant failed to meet its duties of care.

42. Nevertheless, Defendant ASL simultaneously breached the numerous duties of care owed to Plaintiff described under Count One.

43. Additionally, Defendant ASL had prior notice and knowledge that the equipment, and machinery that caused Plaintiff's injuries had similarly ejected wooden planks at laborers in the past, but nevertheless failed to take reasonable safety measures.

44. Rather than take reasonable safety measures, Defendant ASL allowed Plaintiff to continue to perform hard labor in knowingly dangerous conditions without vitally necessary safety equipment such as a helmet/hardhat.

45. All of Defendant ASL's actions, conduct, and omissions alleged and referenced in this Complaint evince an evil mind, was intentional, shocks the conscience, and Defendants consciously pursued a course of conduct despite knowledge their conduct recklessly disregarded known risks of harm to Plaintiff.

46. Accordingly, Plaintiffs respectfully further request that this Honorable Court award punitive damages against Defendants, as well as all damages allowable by law, including, attorneys' fees, costs, interest, and all other relief deemed just and appropriate by this Honorable Court.

**COUNT THREE**
-Deliberate Indifference -
Defendant Centurion

47. Plaintiff incorporates paragraphs 1-46 as though fully set forth herein.

48. Defendant Centurion is a private prison healthcare provider for the State of Arizona, Department of Corrections.

49. Defendant ASL caused Plaintiff's traumatic brain injury. However, as the private entity contracted to provide prisoner healthcare within the State of Arizona Department of Corrections, Defendant Centurion has a separate duty to provide medical care to prisoners like Plaintiff that is reasonable and constitutionally adequate under the Eighth Amendment.

50. Plaintiff has clearly established constitutional rights to appropriate, reasonable, and timely medical care and treatment, and to be free from cruel and unusual punishment. Plaintiff's right to be free from cruel and unusual punishment, due process, and right reasonable medical care were violated, causing harm.

51. Plaintiff has serious medical needs regarding the traumatic brain injury he suffered that was caused by Defendant ASL's negligence.

52. Defendant Centurion and its providers have actual knowledge of Plaintiff's serious medical needs through Plaintiff's reported symptoms, knowledge of the injury Plaintiff suffered, and Plaintiff's medical records.

53. Deliberate indifference to serious medical needs is a clearly established constitutional violation, which any reasonable person would know.

54. Defendant Centurion refuses patient access to medically necessary outside (non-prison) treatment and certain medication based on non-medical reasons.

55. Defendant Centurion knew the serious nature of Plaintiff's injury caused by Defendant ASL's negligence.

56. Defendant Centurion knew that Plaintiff suffered a traumatic brain injury.

57. Defendant Centurion knew that Plaintiff's symptoms also indicated a traumatic brain injury and ongoing medical issues resulting from the traumatic brain injury.

58. Defendant Centurion has exhibited a pattern of deliberate indifference toward Plaintiff since Plaintiff sustained a traumatic brain injury while performing "hard labor" for Defendant ASL.

59. For instance, Defendant Centurion failed to timely procure medically necessary neuroimaging for Plaintiff within a reasonable/medically acceptable timeframe, and then failed to treat Plaintiff and refer Plaintiff to a neurologist or other necessary medical specialists even though Plaintiff exhibited classic traumatic brain injury symptoms and Defendant Centurion knew the nature and seriousness of Plaintiff's medical needs.

60. Instead, Defendant Centurion obtained and relied upon medically insufficient and unreasonable x-ray imaging, when Centurion and its providers know that more advanced imaging such as a CT or MRI was needed to initially assess (Plaintiff's) traumatic brain injury. [2]

61. According to information maintained by the National Institute of Health, MRIs or CTs are recommended neuroimaging for diagnosing cerebral pathology in traumatic brain injury patients.

62. Predictably, the x-rays Centurion performed could not detect Plaintiff's traumatic brain injury and did no more than reveal the absence of a skull fracture, which if suspected, further indicated the need for more advanced imaging such as a CT or MRI. This was unreasonable.

63. Further, based on Mr. Butt's reported symptoms, and description of the injury, of which Centurion and its providers had actual knowledge, Centurion consciously disregarded the need for more advanced imaging due to cost and the ability to have x-rays done at the prison, whereas more advanced imaging would need to be done by an outside medical provider.

---

[2] X-rays typically detect bone fractures.

64. Predictably, Plaintiff began to exhibit **classic** symptoms of his traumatic brain injury, including frequent headaches, seizures, dizziness, ringing in his ears, and blurred vision.

65. According to further information maintained by the National Institute of Health, a person with a traumatic brain injury may experience any of the following:

- **Headache**
- Confusion
- Lightheadedness
- **Dizziness**
- Blurred vision
- **Ringing in the ears, also known as tinnitus**
- Tiredness or sleepiness
- A bad taste in the mouth
- A change in sleep habits
- Behavior or mood changes
- Trouble with memory, concentration, attention, or thinking
- Loss of consciousness lasting a few seconds to minutes
- Sensitivity to light or sound
- Nausea or vomiting

*See* https://www.nichd.nih.gov/health/topics/tbi/conditioninfo/symptoms (as it existed September 16, 2021).

66. Nevertheless, Plaintiff was not treated for his traumatic brain injury. Plaintiff was instead sent for a CT nearly a month later December 10, 2019—well beyond the

timeframe for effective diagnostic neuroimaging. Thus, the CT findings predictably also did not reveal any abnormality.[3][4]

67. Consequently, Plaintiff did not receive effective, timely or reasonable treatment for his traumatic brain injury, despite continued complaints of classic symptoms of a traumatic brain injury, including ringing in his ears, bouts of dizziness, headaches, seizures, difficulty concentrating, decreased visual acuity since the injury, numbness to left side of face, intermittent numbness of stomach, groin, and bowel areas, numbness to hands

---

[3] Notwithstanding the delay in neuroimaging for Plaintiff's traumatic brain injury, it is also known and understood in the medical community that closed head injuries are often not detected by neuro imaging.

*See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1064998/ (last accessed September 16, 2021). ("Studies have found that less than 10% of patients that are considered to have minor head injuries have positive findings on CT and less than 1% require neurosurgical intervention.").

[4] Although well beyond the usual and recommended timeframe for neuroimaging, when 48-72 hours have passed since the injury, an MRI is generally considered to be superior to CT. However, the "overwhelming majority of patients with mild brain injury [still] show no abnormality on MRI."

*See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1064998/ (last accessed September 16, 2021).

and feet at times, memory issues, inability to stand for long without getting dizzy, shakiness, neck stiffness, more difficulty turning his head to left than right, and fasciculation in both arms and both legs.

68. Plaintiff continues to have ongoing symptoms with the appearance of a new potentially dangerous symptoms, including seizures, which warranted additional diagnostics and a specialist referral to a neurologist.

69. Instead of reasonably treating Plaintiff, Defendant Centurion has refused to timely and reasonably assess Plaintiff's symptoms and injuries and to refer Plaintiff for medically necessary care. Defendant Centurion has knowingly relied on false renditions of Plaintiff's medical history, belated imaging, including an MRI performed well beyond the date of injury, and has failed to provide Plaintiff with medically necessary specialist care due to cost and other non-medical reasons.

70. Defendant Centurion's failure to reasonably address Plaintiff's initial and ongoing symptoms, of which Defendant Centurion and its providers have actual knowledge of, with timely, adequate imaging and a specialty referral is both unreasonable and deliberately indifferent.

71. Patients with urgent, serious, or costly medical needs like Plaintiff suffer known, predictable harm when their serious medical needs are inadequately treated or where treatment is delayed, causing harm, including worsening symptoms, and physical pain and suffering.

72. Whether written or unwritten, Defendant Centurion has a custom, practice, or policy of systematically denying or harmfully delaying medically necessary care for patients with emergent and/or urgent medical needs when the objective medical evidence requires treatment by a licensed medical doctor or specialist care.

73. Whether written or unwritten, Defendant Centurion has a custom, practice, or policy of delaying or denying medically necessary specialist care.

74. Defendant Centurion's customs, practices and policies as described in this Complaint are deliberately indifferent, and the moving force behind the deprivation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

75. As a direct and proximate cause of Defendant Centurion's deliberate indifference, Plaintiffs suffers damages through the deprivation of reasonable medical treatment for a known traumatic brain injury that Plaintiff suffered while performing labor for Defendant ASL.

76. As a direct and proximate cause of Defendant Centurion's deliberate indifference, Plaintiffs suffers preventable seizures and other harm because of Defendant Centurion's failure to provide reasonable medical treatment for a known traumatic brain injury that Plaintiff suffered while performing labor for Defendant ASL.

77. As a direct and proximate cause of Defendant Centurion's deliberate indifference, Plaintiffs suffers emotional distress caused by Defendant Centurion's failure to provide reasonable medical treatment for the known traumatic brain injury that Plaintiff suffered while performing labor for Defendant ASL.

78. Defendant Centurion is therefore liable for all applicable damages both alleged in this Complaint and as allowable by law

**COUNT FOUR**
- Negligence -
Defendant Centurion

79. Plaintiff incorporates paragraphs 1-78 as though fully set forth herein.

80. Defendant Centurion and its agent/employee medical providers owed one or more duties of care to Plaintiff, including a duty to provide reasonable medical care.

81. Defendant Centurion owed one or more duties of care to Plaintiff, including a duty to reasonably train and supervise medical staff that provides medical care to patient-inmates like Plaintiff.

82. Defendant Centurion and its agent/employee medical providers breached one or more of these duties of care by failing to reasonably treat Plaintiff as described in this Complaint.

83. Defendant Centurion breached one or more of these duties of care by failing to reasonably train and supervise staff to properly assess, prioritize, manage, and/or refer inmate-patients like Plaintiff with serious medical needs for medically necessary treatment, including diagnostic and imaging.

84. Defendant Centurion breached one or more of these duties of care by failing to reasonably train and supervise staff to properly assess, prioritize, manage, and/or refer inmate-patients like Plaintiff with serious medical needs for medically necessary care by medical specialists, including neurologists.

85. As a direct and proximate consequence of Defendant Centurion and/or its agent/employee medical providers' breach of these duties of care, Plaintiff suffered damages.

86. Plaintiff's injuries were foreseeable, predictable, and natural consequences of Defendant Centurion and/or its agent/employee medical providers' breach of duties of care.

87. Defendant Centurion and/or its agent/employee medical providers are therefore liable for damages caused by their negligence.

88. Defendant Centurion is also liable for the negligence of any agent/employee acting within the scope of employment under *respondeat superior*.

89. Plaintiff seeks damages for all injuries allowable by law caused by Defendant Centurion's negligence and the negligence of any agent/employee of Defendant Centurion.

**COUNT FIVE**

- Declaratory & Injunctive Relief -
Defendant Centurion

90. Plaintiff incorporates paragraphs 1-89 as though fully set forth herein.

91. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.

92. Unless Plaintiff is granted in the form of reasonable treatment for his serious medical needs, including his traumatic brain injury and ongoing seizures, Plaintiff will continue to suffer irreparable harm.

93. Plaintiff's need for relief is vital because the rights at issue are paramount under the United States Constitution and the laws of the United States.

94. WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

95. Adjudge and declare that the acts, omissions, policies and practices of Defendant Centurion, its agents, employees, and all persons acting in concert with them under color of state law or otherwise described herein, are in violation of the rights of prisoners under the Cruel and Unusual Punishment Clause of the Eighth Amendment which guarantees constitutional protection to Plaintiff.

96. Permanently enjoin Defendant Centurion, its agents, employees, and all persons acting in concert with them under color of state law or otherwise described herein, from subjecting Plaintiff to the illegal and unconstitutional conditions, acts omissions, policies and practices alleged herein including: the failure to ensure that Plaintiff has access to qualified medical professionals for his traumatic brain injury and seizures; the failure to ensure that Plaintiff receives vitally necessary treatment and follow-up care for his conditions and injuries; the failure to ensure that Plaintiff receives effective pain and seizure medication; and the routine discontinuance or failure to provide recommended/prescribed medication to Plaintiff.

97. Order Defendant Centurion, its agents, employees, and all persons acting in concert with them under color of state law or otherwise described herein, to provide Mr. Schilleman:

(a) Access to qualified health personnel including all referrals to specialist providers, including a neurologist, medically necessary to treat his traumatic brain injury and seizures;

(b) Effective pain and seizure medication in accordance with a qualified medical provider's recommendation; and

(c) A consistent, uninterrupted supply of prescribed medication.

98. Such relief is narrowly drawn, extends no further than necessary to correct Defendant Centurion's continuing deliberate/reckless indifference Plaintiff's Eighth Amendment rights, and is the least intrusive means necessary to correct Defendant Centurion's continuing violation of Plaintiff's Eighth Amendment rights.

99. Award Plaintiff the costs of this suit, and reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, and other applicable law.

100. Retain jurisdiction until Defendant Centurion has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant Centurion will continue to comply in the future absent continuing jurisdiction.

101. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

102. Plaintiffs incorporate paragraphs 1-101 as though fully set forth herein.

103. Plaintiff hereby demands a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant all allowable damages to Plaintiff under applicable federal law and Arizona state law, whether specifically mentioned in this Complaint or not, including:

i. Compensatory non-economic damages for physical pain and suffering, emotional distress, physical and emotional/mental suffering, including loss of

function, and for Plaintiff's traumatic brain injury in an amount to be determined by the jury.

ii. Compensatory economic damages for reduced future earnings capacity, and present and future health/medical costs and expenses in an amount to be determined by the jury.

iii. Punitive damages in an amount to be determined by the jury.

iv. Declaratory relief as alleged herein.

v. Injunctive relief as alleged herein.

vi. Costs of this suit, and taxable expenses allowable by law.

vii. Such further relief as deemed just and reasonable by this Court, including pre-judgment and post-judgment interest.

RESPECTFULLY SUBMITTED this 16th day of September 2021,

HADOUS|CO. PLLC
/s/Nemer N. Hadous
Nemer N. Hadous, AZ #027529
8245 N. 85th Way
Scottsdale, Arizona 85258
Phone: (602) 492-4432
E-mail: nhadous@hadousco.com
Attorneys for Plaintiff

CHAMI LAW FIRM, PLLC
David A. Chami
David A. Chami, AZ #027585
8245 N. 85th Way
Scottsdale, Arizona 85258
Phone: (818) 600-5564
E-mail: david@pricelawgroup.com
Attorneys for Plaintiff