**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Butt, | No. CV-21-08208-PCT-DWL (MTM) |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Structural Laminators LLC *et al.*, | |
| Defendants. | |

In this action, Dennis Butt ("Plaintiff") asserts tort claims against Arizona Structural Laminators, LLC ("ASL"), Centurion of Arizona, LLC ("Centurion"), and Daniel Miller (collectively, "Defendants") arising from an accident that occurred while Plaintiff was performing labor as an inmate with the Arizona Department of Corrections. (Doc. 44.) Among other things, Plaintiff contends the accident caused him to sustain a traumatic brain injury that has resulted in long-term neurological issues. (*Id.* ¶¶ 33, 35.) In an effort to defend against this claim, Defendants have arranged for Plaintiff to be examined by Defendants' neuropsychological expert. (Doc. 81.)

In December 2022, Plaintiff requested an order compelling the disclosure of the raw data and test materials from that expert's forthcoming examination of Plaintiff. (Doc. 93 at 1.) After a telephonic hearing, Magistrate Judge Morrissey, to whom this matter has been assigned for all pretrial proceedings, granted the request. (*Id.*) Now pending before the Court are Defendants' objections to Judge Morrissey's disclosure order. (Doc. 100.) For the following reasons, the objections are denied.

…

**RELEVANT BACKGROUND**

On September 16, 2021, Plaintiff initiated this action. (Doc. 1.) Plaintiff has since filed an amended complaint. (Doc. 44.) In broad strokes, Plaintiff alleges that ASL failed to provide him with adequate training or safety equipment (including a helmet) before having him perform "dangerous labor" near "heavy equipment and machinery that Defendant ASL knew was prone to malfunction." (*Id.* ¶¶ 25-33.) While Plaintiff was working, a wooden plank "ejected" from the machinery, striking Plaintiff in the head. (*Id.* ¶ 33.) This incident caused Plaintiff to suffer severe injuries, including a traumatic brain injury. (*Id.* ¶¶ 33-34.) Centurion then deprived Plaintiff of reasonable care for those injuries. (*Id.* ¶ 37.) Plaintiff continues to suffer from medical issues related to this incident, including ongoing seizures. (*Id.* ¶¶ 33, 35.)

On February 28, 2022, Judge Morrissey issued a scheduling order. (Doc. 19.)

On March 28, 2022, Judge Morrissey granted the parties' stipulation for a protective order. (Doc. 25.) As relevant here, under the protective order, materials designated "CONFIDENTIAL – FOR COUNSEL ONLY" may only be viewed by counsel of the receiving party, independent experts (and certain employees associated with such experts), the Court and any court staff and administrative personnel, court reporters employed in this litigation (and acting in that capacity), "[a]ny person indicated on the face of the document to be its author or co-author," and "any person identified on the face of the document as one to whom a copy of such document was sent before its production in this action." (*Id.* at 4-5.)

On October 12, 2022, the parties met and conferred about Plaintiff's examinations by Defendants' experts. (Doc. 100 at 2.) As relevant here, Defendants plan to have Plaintiff undergo a neuropsychological examination conducted by Defendants' neuropsychological expert, Dr. Tsanadis. (*Id.* at 2-4.) During the conference, Plaintiff's counsel asked whether Dr. Tsanadis would agree to produce his raw data. (*Id.* at 2.) When Defendants relayed this question to Dr. Tsanadis, he stated that he would include the names of administered tests, raw testing scores, and his interpretation thereof in his report, but

that he was ethically precluded from sharing testing materials, such as testing protocols, stimuli, and manuals, with an individual not licensed in psychology. (*Id.* at 2-3.) Dr. Tsanadis thus agreed to provide those documents directly to Plaintiff's expert neuropsychologist, assuming Plaintiff retained one. (*Id.* at 3.)

On December 1, 2022, Plaintiff's counsel expressed concerns about this proposal. (Doc. 100-1 at 55 [email from Plaintiff's counsel to defense counsel].) Plaintiff then requested a hearing regarding the parties' discovery dispute. (Doc. 91.)

On December 7, 2022, Judge Morrissey held a telephonic hearing. (Doc. 100-1 at 90-104 [transcript of proceedings].)

On December 9, 2022, Judge Morrissey granted Plaintiff's motion to compel the production of the raw data and test materials, subject to designation as "CONFIDENTIAL – FOR COUNSEL ONLY" under the protective order. (Doc. 93 at 2-3.)

**DISCUSSION**

I.  <u>Legal Standard</u>

Under Rule 72(a) of the Federal Rules of Civil Procedure, when a magistrate judge issues an order resolving a non-dispositive motion, "[a] party may serve and file objections to the order within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "The clearly erroneous standard applies to the magistrate judge's factual findings . . . [while] the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 458 (D. Ariz. 2012) (cleaned up). "Review under the clearly erroneous standard requires considerable deference; the findings . . . stand unless the [reviewing] court has the definite and firm conviction that a mistake has been committed." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1024 (9th Cir. 1999) (citation and internal quotation marks omitted).

Here, the challenged order is non-dispositive because it relates to pretrial discovery. *See, e.g.*, *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) ("Non-dispositive

matters include . . . pretrial discovery matters . . . ."); *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) ("Pre-trial discovery issues are generally considered non-dispositive matters.").

II.  Underlying Order

On December 9, 2022, Judge Morrissey granted Plaintiff's motion to compel the production of raw data and test materials, subject to designation as "CONFIDENTIAL-FOR COUNSEL ONLY" under the protective order previously issued in the case. (Doc. 93 at 2-3.) Judge Morrissey found that (1) Defendant "failed to present a current ethical guideline that would preclude the production of the raw data to Plaintiff's counsel," (2) despite arguing that production of the test materials could interfere with the expert's copyright obligations, "Defendants have not produced evidence of a copyright obligation which precludes its expert from producing the test materials to Plaintiff's counsel," and (3) "Plaintiff has not retained a psychologist expert who could review the materials." (*Id.* at 1-2.) Judge Morrissey also noted that "other courts presented with this same issue have taken a variety of approaches including, ordering full disclosure without qualification, requiring disclosure only to opposing counsel's qualified expert witness, or issuing a protective order." (*Id.* at 2.) Judge Morrissey concluded that the final option (*i.e.*, disclosure pursuant to a protective order) was preferable here in part because the second option (*i.e.*, disclosure only to opposing counsel's qualified witness) would have the practical effect of "requir[ing] Plaintiff to retain such an expert solely to review the data and test materials which underly Defendant's expert's opinion." (*Id.* at 2-3.)

III.  The Parties' Arguments

Defendants object to Judge Morrissey's order only to the extent it compels the production of test materials, not raw data (*i.e.*, "test data"). (Doc. 100 at 5.)[1] First, Defendants contend the ruling is "clearly erroneous" because it is not supported by the entirety of the evidence. (*Id.*) More specifically, Defendants note that Plaintiff's counsel

---

[1] Defendants clarify that Dr. Tsanadis does not object to disclosing the raw data to Plaintiff's counsel. (Doc. 100 at 5.)

- 4 -

gave conflicting responses when asked during the December 7, 2022 hearing whether Plaintiff had already retained an expert qualified to review the data. (*Id.* at 6-7.) In a related vein, Defendants assert that "Plaintiff's counsel conceded [at the hearing] that the only way for him to prepare for Defendants' expert's cross-examination is to consult with a psychology or neuropsychology expert." (*Id.* at 8.) Defendants further note that Plaintiff filed a motion to extend expert deadlines on December 1, 2022; according to Defendants, because the motion represents that Plaintiff has two scheduled examinations, one in December and one in January, this "clearly indicates Plaintiff has retained more than one expert," including an expert licensed in psychology. (*Id.* at 6-8.)[2] Defendants contend that because the challenged order "was specifically based on Plaintiff's representations that they have 'not retained' an expert with a license in psychology," "the Order is not supported by the evidence and should be vacated or modified to require the disclosure only to a licensed psychologist as already agreed to by Dr. Tsanadis if Plaintiff discloses a licensed expert." (*Id.*)[3] Defendants next argue that the challenged order exceeds the permissible scope of discovery under Rule 26. (*Id.*) More specifically, Defendants contend that because "any person licensed in psychology," including Dr. Tsanadis, is precluded by APA Ethical Standard § 9.11 from disclosing test materials to an individual not licensed in psychology, the challenged order unduly burdens Defendants. (*Id.* at 9.) Defendants provide exhibits supporting this position, including an affidavit signed by "[m]ultiple clinical neuropsychologists" and a copy of a publication titled "Official position of the American Academy of Clinical Neuropsychology." (*Id.* at 10-11. *See also* Doc. 100-1 at 106-12 [Ex. 10]; *id.* at 114-37 [Ex. 11].) Defendants also note that testing companies often require purchasers to have specific licensure and that several of the test manuals

---

[2]   According to Defendants, Dr. Tsanadis is open to sharing the testing materials with an individual licensed in psychology, including a consulting expert. (*Id.* at 7.)

[3]   Defendants also contend that, "[i]f Plaintiff chooses not to disclose an expert qualified to offer opinions on his neuropsychological damages, then this dispute is moot, as those claimed injuries/damages will be subject to summary judgment. Expert testimony is undoubtedly required to explain to the jury how Plaintiff's claimed psychological damages—including his claims of memory issues, inability to concentrate, confusion, and other similar issues—are causally related to his alleged injuries giving rise to this lawsuit." (*Id.* at 8.)

- 5 -

"specifically state that test materials, protocols, and interpretive reports should be released only to qualified professionals who will safeguard their proper use." (Doc. 100 at 9-10. *See also id.* at 10 ["The tests administered by neuropsychologists are also copyrighted."].) Finally, Defendants assert that they have "contacted twelve local neuropsychologists in an unsuccessful attempt to locate any neuropsychologist who would be willing to perform an [examination] in this case given the Order in place requiring them to disclose testing materials." (*Id.* at 10-11. *See also id.* at 10 ["Thirteen neuropsychologists, including Defendants' chosen expert Dr. Tsanadis, declined to conduct an [examination] in this case."].) Thus, Defendants contend the order "essentially bars Defendants[] from the opportunity to defend Plaintiff's claimed injuries and damages as they relate to his alleged neuropsychological issues, as their duly diligent effort to locate a new expert to conduct an [examination] was wholly unsuccessful." (*Id.* at 11.)

In response, Plaintiff contends that "Defendants cite no actual APA Ethical Standard, law or authority that renders the Order 'clearly erroneous'" or 'contrary to law.'" (Doc. 105 at 1.) As for Rule 26, Plaintiff argues that the "Discovery Order is well within permissible discovery" because "[t]here is absolutely no prohibition on disclosure of neuropsychologist raw data or testing materials in litigation." (*Id.*) Plaintiff further argues that any ethical dilemma is resolved by the protective order. (*Id.* at 7-8.) As for undue prejudice, Plaintiff argues this is the incorrect legal standard and is "misplaced because Plaintiff would be the only party to suffer severe prejudice if Defendants are allowed to conceal the underlying facts and data upon which their proposed neuropsychologist intends to rely upon." (*Id.* at 4.) In a related vein, Plaintiff argues that Defendants "attempt to strong-arm the Court by threatening that their neuropsychologist will refuse to conduct the examination," but "this is not a basis for sustaining an objection under Rule 72." (*Id.* at 9, emphasis omitted.) Plaintiff also notes that publishers of the test materials, who typically have stringent rules regarding the dissemination of such materials, allow the release of such materials in litigation subject to a protective order. (*Id.* at 11-12 [quoting Pearson's litigation policies].) Finally, Plaintiff argues that Defendants' objection is "intended to

shield their expert from effective and meaningful cross-examination." (*Id.* at 3. *See also id.* at 8 ["Defendants' objection is rooted in a litigation strategy of concealment and inevitable prejudice to Plaintiff."].) According to Plaintiff, Defendants' request, if granted, would force Plaintiff "to retain an expert to telegraph questions to Plaintiff's counsel during trial, to then ask Defendants' expert on cross-examination which is untenable." (*Id.* at 13. *See also id.* ["Plaintiff's counsel will be entirely unable to meaningfully cross-examine Defendants' expert if he is permitted to testify while refusing to produce his raw data and testing material."].)

IV.   Analysis

The parties' dispute boils down to whether Dr. Tsanadis (or any other neuropsychologist whom Defendants might retain to examine Plaintiff) should be required to produce to Plaintiff's counsel, subject to a protective order, the test materials used in that examination. The tension arises from an apparent conflict between the Federal Rules of Civil Procedure and the ethical principles for psychologists, as defined by the APA.

On the one hand, Rule 26(a)(2)(B)(ii) provides that an expert's written report must set forth "the facts or data considered by the witness in forming" the expert's opinions. Here, the testing materials constitute some of the data on which Defendants' expert will rely. Thus, those materials are presumably subject to disclosure under Rule 26(a)(2)(B). As this Court has observed in other cases, the general rule is that "[i]t doesn't matter that the data on which [the expert] relied was 'confidential'—it still need[s] to be disclosed (albeit potentially pursuant to a protective order) so [the opposing party] and the Court [can] meaningfully evaluate the foundation for [the expert's] opinions." *Longoria v. Kodiak Concepts LLC*, 2021 WL 1100373, *14 (D. Ariz. 2021) (citing cases).

On the other hand, the APA Code of Conduct places certain limits on the disclosure of test data and test materials. For example, APA Ethical Standard § 9.04 provides: "The term test data refers to raw and scaled scores, client/patient responses to test questions or stimuli, and psychologists' notes and recordings concerning client/patient statements and behavior during an examination. . . . Pursuant to a client/patient release, psychologists

- 7 -

provide test data to the client/patient or other persons identified in the release. . . . In the absence of a client/patient release, psychologists provide test data only as required by law or court order."  Meanwhile, APA Ethical Standard § 9.11 provides: "The term test materials refers to manuals, instruments, protocols, and test questions or stimuli and does not include test data as defined in Standard 9.04, Release of Test Data.  Psychologists make reasonable efforts to maintain the integrity and security of test materials and other assessment techniques consistent with law and contractual obligations, and in a manner that permits adherence to this Ethics Code."  Here, Defendants agree that the test data may be disclosed. (Doc. 100 at 5.)  Thus, only § 9.11 is implicated.[4]

"Recognizing the ethical and contractual conflicts in this area, courts have taken a variety of approaches" when addressing whether and how to order the disclosure of test materials used by a psychologist serving as an expert witness.  *Glennon v. Performance Food Grp., Inc.*, 2021 WL 3130050, *6 (S.D. Ga. 2021).  "These approaches include ordering full disclosure without qualification, requiring disclosure only to opposing counsel's qualified expert witness, or issuing a protective order."  *Id.*  "The most common resolution for this type of dispute has been some compromise between full, unconditioned disclosure and total exemption from the Federal Rules of Civil Procedure."  *Taylor v. Erna*, 2009 WL 2425839, *2 (D. Mass. 2009).  Such compromises often involve disclosure pursuant to a protective order.  *See, e.g.*, *Wayne*, 2016 WL 492338 at *9 (test materials had to be disclosed under a protective order that allowed opposing counsel to review the documents but not receive copies; the order also made the documents available to counsel during the expert depositions).

In reviewing Judge Morrissey's ruling, the Court applies the "clearly erroneous" standard to findings of fact and the "contrary to law" standard to legal conclusions.  As a factual matter, Judge Morrissey found that "Plaintiff has not retained a psychologist expert

---

[4] Other courts have noted that "in some cases, the line between test data and test materials may blur, as revealing the answers to certain test questions may also disclose the underlying questions."  *Wayne v. Officer Ralph Kirk #21*, 2016 WL 492338, *4 (N.D. Ill. 2016).  However, this potential for overlap does not appear to be at issue here.

who could review the materials." (Doc. 93 at 2.) He also noted that "Defendants have not produced evidence of a copyright obligation which precludes its expert from producing the test materials to Plaintiff's counsel." (*Id.*) Even though Defendants provided reasons to believe Plaintiff has retained (or will retain) some sort of psychological expert, it was not clearly erroneous for Judge Morrissey to reach the factual conclusions he reached in light of all of the evidence in the record. (Doc. 100-1 at 93 [Plaintiff's counsel: "We have not yet retained a neuropsychologist, Your Honor. We have other experts. . . . [T]o date we have not decided whether we're planning on hiring a neuropsychologist or not."].)

Defendants also contend the order is contrary to law because it compels the production of materials outside the scope of discovery under Rule 26. (Doc. 100 at 8.) "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Morgal*, 284 F.R.D. at 459 (citation omitted). *See also id.* ("Likewise, a magistrate judge's decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.") (citation and internal quotation marks omitted).

Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.*

Defendants argue that the burden of producing the test materials to an individual not licensed in psychology (such as Plaintiff's counsel) outweighs the likely benefit to Plaintiff. Defendants contend the burden is substantial because the disclosure order requires their expert to violate § 9.11. (Doc. 100 at 8-11.) In contrast, Defendants contend that "disclosure of testing materials is of no benefit to Plaintiff's counsel, who understandably conceded he would need the assistance of a licensed psychologist to interpret the testing materials in order to effectively cross-examine Dr. Tsanadis." (*Id.* at 11.)

The Court acknowledges that the burden imposed on Defendants, if they are unable to retain a neuropsychologist willing to comply with the order, is substantial. Further, some of Plaintiff's arguments (and supporting authorities) are unconvincing because they address test *data*, not test *materials*. For example, during the discovery hearing, Dr. Tsanadis testified that his ethical responsibilities allow him to release raw data in his report but prevent him from releasing the test materials except to another individual licensed in psychology. (Doc. 100-1 at 93-94.)[5] Judge Morrissey then asked Plaintiff's counsel to explain why the test protocols should nevertheless be released to counsel. (*Id.* at 95.) In response, Plaintiff's counsel emphasized that APA Ethical Standard § 9.04 allows disclosure of raw data and discussed the 2002 amendments to that rule. (*Id.* at 96.) And in response to Defendants' objections to the order, Plaintiff again relies primarily on § 9.04, referencing that section for the proposition that "the APA Ethical Standards do not prohibit disclosure of raw data or testing materials to counsel during litigation, but specifically permit this subject to a court order like the Discovery Order." (Doc. 105 at 4. *See also id.* at 6 [arguing the 2002 amendments to § 9.04 "rejected arguments by parties like Defendants incorrectly averring that the APA Ethical Standards prohibit disclosure of raw data or testing materials to non-licensed persons such as attorneys"]; *id.* at 15 ["To refuse Plaintiff's counsel the right to review the raw data, testing materials and interpretive materials is illogical when one considers all the test questions themselves are given to Plaintiff, yet somehow Plaintiff's attorney is not provided the *data* which support the basis of the defense expert's opinion."], emphasis added.) This approach is misplaced because § 9.04 applies only to test data; test materials are governed by § 9.11. This distinction

---

[5] When asked by Judge Morrissey if release to a neurologist would pose ethical concerns, Dr. Tsanadis responded: "It does pose issues, because . . . first of all, a neurologist does not have the training in interpreting these specific tests. And second, they're not bound by the APA ethics code, which has a section 9.11 that's focused on maintaining test security. As I already mentioned, the raw test data will be revealed, that's test scores. So any neuropsychologist looking at my report can interpret the data just based on what I provide at the end of the report. What I'm opposed to releasing is the actual test protocols." (Doc. 100-1 at 94-95.) Defendants' counsel also clarified that Defendants would not object to Plaintiff's psychologist expert (assuming one is retained) releasing the protocols to Plaintiff's counsel if that expert believed the ethical requirements did not prevent such disclosure. (*Id.* at 95 ["[T]hat's between them and their expert."].)

matters: "a psychologist is not required to release raw data to a non-psychologist but he or she is not prohibited from doing so, whereas the release of 'test materials' is very much protected by the APA Code." *Munoz v. FCA US LLC*, 495 F. Supp. 3d 1008, 1016 (D.N.M. 2020). Put another way, the disclosure of test materials under § 9.11 is "more restrictive" than the disclosure of test data under § 9.04. *Wayne*, 2016 WL 492338 at *6. *See also Guinn v. Praxair, Inc.*, 2019 WL 12096811, *1 (E.D. Mich. 2019) ("The APA permits disclosure of test data as required 'by law or court order.' However, the disclosure of test material is held to a higher requirement . . . .") (citation omitted).

Nevertheless, Defendants are not entitled to reversal on this basis because Judge Morrissey did not conflate §§ 9.04 and 9.11—he acknowledged the distinction between test data and test materials, discussed the separate APA Ethical Standard applicable to each category of information, and referenced several decisions from district courts addressing the disclosure of test materials. (Doc. 93 at 2.)[6] One of those decisions, *Glennon*, was cited by Plaintiff's counsel during the discovery hearing. (Doc. 100-1 at 97.) In *Glennon*, the defendant argued that the professional ethics rules prohibited an expert psychologist from producing raw data to a non-psychologist and separately argued that the production of the test materials used by the expert would interfere with copyright and contractual obligations owed to the company that produces the test. 2021 WL 3130050 at *5. After discussing APA Ethical Standard § 9.04, the court found that the ethical guidelines did not preclude the production of test *data* to non-psychologists. *Id.* As for the test *materials*, the court noted that § 9.11 "recognize[s] the importance of maintaining the integrity and security of test materials" but focused primarily on the test company's legal policies. *See, e.g., id.* at *6 ("Pearson's litigation policies state, 'Should litigation in which a psychologist

---

[6] *See, e.g., Taylor*, 2009 WL 2425839 at *3 (acknowledging "the importance of preserving the integrity of test materials and evaluative methods" but finding that "[a]dequate protection of this information can . . . be achieved in a manner consistent with the mandates of the Federal Rules" and ordering disclosure under a protective order); *Gonzales v. Schriro*, 2007 WL 1108930, *1 (D. Ariz. 2007) (denying motion to compel disclosure for testing materials on which opposing party's psychological expert relied, but only because the court had the "understanding that [the movant's] mental health expert had access to the copyrighted assessment instruments used by [the opposing expert]".

is involved reach the stage where a court considers ordering the release of proprietary test materials to non-professionals such as counsel, we request that the court issue a protective order prohibiting parties from making copies of the materials . . . ."). The *Glennon* court ultimately ordered disclosure of the test materials pursuant to a protective order, noting that "Plaintiff has not retained a qualified psychologist expert who could review these materials." *Id.*

Thus, despite Plaintiff's sometimes misplaced focus on test data, Judge Morrissey properly considered the distinction between test data and test materials and found that disclosure of the latter pursuant to the protective order was appropriate. This decision was not contrary to law, as many other courts have reached the same conclusion under analogous circumstances. *See, e.g.*, *Collins v. TIAA-CREF*, 2008 WL 3981462, *4-5 (W.D.N.C. 2008) (describing the concern that test materials "can no longer be used and interpreted with confidence" if the materials become public); *Glennon*, 2021 WL 3130050 at *6 ("[T]there is no indication a protective order would not resolve Dr. Gibson's concerns. Thus, the Court [grants] Plaintiff's request for raw data and test materials, but only subject to entry of a protective order. . . . Additionally, if Plaintiff does retain a licensed psychologist as an expert, the data and test materials can be released directly to that individual and without the need for a protective order."); *Wayne*, 2016 WL 492338 at *7 ("While ethical and disciplinary rules do not create a privilege, the Federal Rules of Civil Procedure allow courts to issue protective orders or quash third-party subpoenas where a document request would cause a person undue burden."); *Gibbs v. Georgia-Pac.*, 2009 WL 10695341, *6 (S.D. Ala. 2009) ("To be sure, it is clear, . . . that standardized psychological testing materials, including test statements, are copyrightable. However, . . . where a court has ordered the disclosure of standardized test materials, there is no basis for the owner(s) of the copyright to assert copyright infringement against the compliant psychologist or 'user.'").

Defendants' assertion that they have been unable to find a neuropsychologist willing to conduct an examination of Plaintiff under the terms of the discovery order is troubling.

Moreover, the exhibits provided by Defendants indicate that the concerns expressed by Dr. Tsanadis (and the other neuropsychologists whom Defendants contacted) are not limited to this case. (*See, e.g.*, Doc. 100-1 at 106-37.)[7] The Court disagrees with Plaintiff's assertion that the experts' ethical concerns are a "deliberate, pre-meditated litigation tactic by defense experts." (Doc. 105 at 9.) If anything, the fact that publications discussing this issue provide suggested mitigation strategies, including canvassing other neuropsychologists to "demonstrate to the court that the imposed conditions are not reasonable and not necessary" (Doc. 100-1 at 128), demonstrates the weight of this ethical dilemma. With that said, Defendants do not explain why the protective order is insufficient to satisfy § 9.11's mandate that psychologists "maintain the integrity and security of test materials and other assessment techniques consistent with law and contractual obligations." Indeed, Defendants' position is somewhat circular: disclosure of test materials under the Protective Order is an ethical violation because "thirteen local neuropsychologists all declined to conduct an examination in this case based on the Order." (Doc. 100 at 11.) But by its plain language, § 9.11 does not categorically prohibit disclosure to non-psychologists. Although some professionals have interpreted it that way, others have not. *See, e.g.*, APA Committee on Legal Issues, *Strategies for Private Practitioners Coping With Subpoenas or Compelled Testimony for Client/Patient Records or Test Data or Test Materials*, 47 Prof'l Psychology: Research and Practice 1, 2 (2016) ("Although a Client/Patient's test data may have to be released in response to a subpoena, the disclosure of test materials . . . may require the additional safeguard of a court order . . . ."); Donna Vanderpool, *Requests for Disclosure of Psychological Testing Information*, 11 Innovations in Clinical Neuroscience 41, 42 (2014) ("[P]sychologists should continue to only disclose test materials to qualified licensed psychologists or pursuant to a valid court order.").[8] This apparent range of views within the field of psychology suggests that Judge

---

[7]   In *Wayne*, for example, the expert physicians retained their own counsel and opposed disclosure, arguing that "legal, ethical and contractual obligations permit them to disclose neuropsychological test materials and raw data only to a psychologist," not an attorney. 2016 WL 492338 at *1.

[8]   *See also* APA Committee on Legal Issues at 11 ("Ultimately, the judge's ruling

Morrissey's decision will not deprive Defendants of "the ability to retain *any* neuropsychologist expert." (Doc. 100 at 11.)

In sum, Judge Morrissey did not commit clear error and applied the correct legal standards. Thus, the Court has no basis to overrule his reasonable judgment regarding the relative burdens imposed on the parties by the challenged order.

Accordingly,

**IT IS ORDERED** that Defendants' objections (Doc. 100) are **denied**.

Dated this 2nd day of February, 2023.

_____
Dominic W. Lanza
United States District Judge

---

controls in a court. Psychologists who are not violating human rights and who take reasonable steps to follow Standard 1.02 of the Ethics Code and inform the Court of their requirements under the Ethics Code will not be subject to disciplinary procedures for complying with a court order directing to produce information.").